DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
IN THE DISTRICT OF IDAHO

| | |
|---|---|
| JORGE M. MENDOZA,<br><br>Plaintiff,<br><br>v.<br><br>GEM MEDICAL INVESTORS, LLC, d/b/a LIFE CARE CENTER OF IDAHO FALLS, a Tennessee limited liability company; AND LIFE CARE CENTERS OF AMERICA, INC., a Tennessee corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $400.00 |

Plaintiff, Jorge M. Mendoza ("Mendoza"), by and through his counsel of record, Casperson Ulrich Dustin PLLC, and as a cause of action against Defendant Gem Medical Investors, LLC d/b/a Life Care Center of Idaho Falls, and Life Care Centers of America, Inc., complains and alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action brought under the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq*.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, and 1343; and 42 U.S.C. § 12117.

1 - COMPLAINT AND DEMAND FOR JURY TRIAL

3. Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose, in this judicial district; and venue also properly lies in this district pursuant to 42 U.S.C. § 12117 and 29 U.S.C. § 2617 because the unlawful employment practices were committed in this judicial district.

## PARTIES

4. Plaintiff Jorge M. Mendoza ("Plaintiff") is a male citizen and resident of the United States of America, who is, and was at all times relevant to the Complaint, a resident of Bonneville County, Idaho.

5. Defendant Gem Medical Investors, LLC, a Tennessee limited liability company, d/b/a Life Care Center of Idaho Falls ("Life Care") is, on information an belief, a subsidiary of Life Care Centers of America.

6. Defendant Life Care Centers of America, Inc. ("LCCA") is a Tennessee corporation with its principal location in Cleveland, Tennessee. LCCA operates locations through out the United States including Gem Medical Investors, LLC, d/b/a Life Care Center of Idaho Falls.

7. Life Care and LCCA are collectively referred to hereafter a "Defendants." At all times relevant to this Complaint, Defendants were joint employers or constituted a single employer of Plaintiff.

8. At all times relevant to this Complaint, Defendants regularly employed fifteen or more persons whose services were performed in the State of Idaho and was engaged in an industry affecting commerce. Consequently, Defendants' conduct is properly regulated by 42 U.S.C. § 12101, *et seq.*

## FACTS COMMON TO ALL COUNTS

9. Mendoza realleges and incorporates by reference paragraphs 1 through 8 as though fully set forth herein.

10. In or about late November/early December 2016, Mendoza began work for Defendants as a Certified Nursing Assistant ("CNA").

11. On or about January 13, 2017, Mendoza injured his back while lifting a heavy resident at work. Mendoza initially hoped that it was a minor issue and would go away. However, it got worse over the next couple of days.

12. On or about January 15, 2017, due to the pain in his lower back getting worse, Mendoza reported the injury to Defendants and visited Redicare at Defendants' direction. The doctor at Redicare issued work restrictions associated with Mendoza's back injury.

13. On or about January 23, 2017, Mendoza returned to Redicare for a follow up because his back had not improved. The doctor at Redicare issued work restrictions of lifting no more than 50lbs and advised Mendoza to follow up in one week.

14. On or about January 31, 2017, Mendoza visited Redicare for a follow up. The doctor suggested Mendoza try to work without restrictions and to follow up again in one week. Mendoza returned to work and worked several days without restrictions.

15. On or about February 8, 2017, Mendoza returned to Redicare for a follow up. Mendoza's back pain had increased significantly during the days he worked without out restrictions. The doctor at Redicare issued new work restrictions of no lifting more than 30 lbs and a 15 minute break every 2 hours, and ordered physical therapy.

16. Mendoza provided documentation of his restrictions to Defendants. Although Defendants initially attempted to comply with the restrictions, after Mendoza received restrictions on or about February 8, 2017, Defendants did not comply with the restrictions.

17. On or about February 20, 2017, Mendoza returned to Redicare because his symptoms were not improving and he was having trouble sleeping. The doctor issued work restrictions of no lifting more than 25-30 lbs and a 15 minute break every 2 hours, and to continue physical therapy.

18. Mendoza provided these restrictions to Defendants. Again, Defendants continued to schedule Mendoza for work tasks which did not comply with the restrictions.

19. Mendoza reported to his supervisors numerous times that the restrictions were not being followed. However, Defendants continued to schedule Mendoza to complete work duties which did not comply with the restrictions.

20. On or about February 26, 2017, Mendoza returned to Redicare for a follow up appointment. The doctor issued work restrictions of no lifting more than 25 lbs and to continue physical therapy. Mendoza provided the restrictions to Defendants.

21. Again, Defendants assigned Mendoza to work tasks that did not comply with the work restrictions.

22. Mendoza continued to ask his supervisors numerous times to follow the work restrictions, but Defendants continued to schedule him for work tasks which did not comply with the work restrictions.

23. On or about March 6, 2017, Mendoza again returned to Redicare for a follow up appointment and expressed his concerns that Defendants were not following the work restrictions issued.

        The doctor issued new work restrictions of no lifting more than 10 lbs and to continue physical therapy.

24. Mendoza provided the restrictions to Defendants.

25. On or about March 8, 2017, Mendoza received email correspondence from Gayle Stephens, Defendants' Accounts Payable/Payroll Coordinator, offering him light duty work.

26. On or about the same day, Mendoza responded to Ms. Stephens' email expressing his concerns regarding Defendants' failure to accommodate the work restrictions. Ms. Stephens responded to Mendoza's email stating that if he did not respond to the offer of light duty by March 14, 2017, it would be considered a declination of the light duty offer. Ms. Stephens did not address any of Mendoza's concerns.

27. Because Ms. Stephens did not address his concerns, on or about the next day, Mendoza contacted Defendants' Worker's Compensation Coordinator, Bobby, to express his concerns about Defendants failure to accommodate his restrictions.

28. On or about March 10, 2017, Mendoza met with Bobby and Landon Taylor ("Taylor"), Defendants' Executive Director. Bobby explained to Mendoza he was being offered Temporary Modified Duty ("TMD"), and provided him with paperwork providing a list of modified job duties, and a schedule. Mendoza, Bobby, and Taylor signed the TMD letter and modified list of duties and schedule to be implemented going forward.

29. During this meeting, Mendoza also expressed to both Bobby and Taylor his concerns about prior problems with Defendants not following the restrictions his doctor issued and his concerns about that issue going forward.

30. Bobby advised Mendoza that if his concerns regarding Defendants' failure to follow his doctor's restrictions arose again, he was to contact her directly.

31. As Mendoza was leaving the meeting, Taylor stopped him and said they needed to discuss a matter not related to the workers' compensation matter. Taylor then handed Mendoza a termination notice stating that he had "no showed/no called" for shifts on March 4, 6 & 8, 2017, and that as of March 10, 2017, his employment with Defendants was terminated. The basis for the termination was false.

32. On or about December 5, 2017, Mendoza filed a Charge of Discrimination with the Equal Employment Opportunity Commission, which was dually filed with the Idaho Human Rights Commission.

33. On or about December 12, 2018, Mendoza received a Notice of Right to Sue. Mendoza has exhausted his administrative remedies.

## COUNT I
## VIOLATION OF THE
## AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT
## DISABILITY DISCRIMINATION

34. Mendoza realleges and incorporates by referenced paragraphs 1 through 33 above, as though fully incorporated herein.

35. At all times relevant hereto, Mendoza had a disability as defined by the ADAAA.

36. Mendoza had a physical impairment related to his back injury, and a record of such impairment.

37. Mendoza's physical impairment and record of such impairment substantially limited his major life activities, including performing manual tasks, such as lifting and reaching, as well as walking, and sleeping.

38. Mendoza was a qualified individual under the ADAAA, i.e., an individual who, with or without reasonable accommodation, could perform the essential functions of the position he held.

39. Defendants took adverse employment actions against Mendoza based upon his disability, including termination of Mendoza's employment. As a direct and proximate result of Defendants' actions and/or failures to act, Mendoza has suffered and will continue to suffer emotional distress consisting of outrage, shock, and humiliation, based upon the discrimination he suffered. Further, Mendoza has suffered a loss of earnings and other employment based job opportunities. Mendoza is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any equitable remedies available to him.

40. Defendants' conduct was malicious and oppressive, and done with reckless disregard for Mendoza's federally protected rights for which Mendoza is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT II
## VIOLATION OF THE
## AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT
## FAILURE TO ACCOMMODATE

41. Mendoza realleges and incorporates by referenced paragraphs 1 through 40 above, as though fully incorporated herein.

42. Mendoza sought to engage in the interactive process under the ADAAA when he provided Defendants with restrictions from his doctor on multiple occasions.

43. Defendants refused to engage in the interactive process with Mendoza and continued to assign him job tasks without regard to Mendoza's restrictions.

44. When Defendants eventually engaged in the interactive process with Mendoza and provided him with TMD work, Defendants terminated Mendoza before he could start the TMD work.

45. Defendants discriminated against Mendoza by failing to accommodate his disability and terminating his employment.

7 - COMPLAINT AND DEMAND FOR JURY TRIAL

46. As a direct and proximate result of Defendants' actions and/or failures to act, Mendoza has suffered and will continue to suffer emotional distress consisting of outrage, shock, and humiliation, based upon the discrimination he suffered. Further, Mendoza has suffered a loss of earnings and other employment based job opportunities. Mendoza is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any equitable remedies available to him.

47. Defendants' conduct was malicious and oppressive, and done with reckless disregard for Mendoza's federally protected rights for which Mendoza is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT III
## VIOLATION OF THE
## AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT
## RETALIATION

48. Mendoza realleges and incorporates by reference paragraphs 1 through 47 above, as though fully incorporated herein.

49. Mendoza engaged in protected activity by reporting his work-related injuries and disability associated with his back, and requesting accommodation for his disability arising from his work-related injuries.

50. Defendants subjected Mendoza to adverse employment action subsequent to Mendoza engaging in protected activity by terminating Mendoza's employment.

51. Such adverse actions constitute retaliation against Mendoza for engaging in protected activity.

52. As a direct and proximate result of Defendants' actions and/or failures to act, Mendoza has suffered and will continue to suffer emotional distress consisting of outrage, shock, and humiliation, based upon the discrimination he suffered. Further, Mendoza has suffered a loss

of earnings and other employment based job opportunities. Mendoza is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any equitable remedies available to him.

53. Defendants' conduct was malicious and oppressive, and done with reckless disregard for Mendoza's federally protected rights for which Mendoza is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## ATTORNEY'S FEES

54. As a further direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has been compelled to retain the services of counsel, and have incurred and will continue to incur costs and attorney's fees. Plaintiff is therefore entitled to attorney's fees and costs incurred in pursuing this action pursuant to 42 U.S.C. § 12205.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

Plaintiff seeks the judgment of the Court against Defendants as follows:

1. For general and compensatory damages, and all other statutorily available damages, in an amount to be proven at trial;
2. For any equitable remedies available to her, including reinstatement;
3. For statutorily available costs and attorney's fees;
4. For prejudgment interest on all amounts claimed; and
6. For such other and further relief as the Court deems just and proper.

DATED this 6th day of February, 2019.         /s/
                                              Amanda E. Ulrich, Esq.
                                              CASPERSON ULRICH DUSTIN PLLC

Complaint.Rev 2.wpd

9 - COMPLAINT AND DEMAND FOR JURY TRIAL